**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| BELAIR ELECTRONICS INC., | |
| Plaintiff, | |
| v. | Case No. 3:20-cv-00630-JD-MGG |
| CARVED, LLC, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SANCTIONS PURSUANT TO RULE 11</u>**

## **TABLE OF CONTENTS**

I.   BACKGROUND ........................................................................................................ 1

  A.  The Parties ........................................................................................................ 1

  B.  Asserted Patents ............................................................................................... 2

II.  LEGAL STANDARDS FOR SANCTIONS UNDER FED. R. CIV. P. 11 ............................ 4

III.  ARGUMENT .......................................................................................................... 5

  A.  BelAir's Infringement Allegations Against Carved Are Frivolous ...................... 5

    i.   BelAir Did Not Know that Patent Claims Should Be Construed  Prior to Filing ........... 5

    ii.  BelAir Practically Admitted that Its Complaint Is Frivolous ........................... 7

    iii. Carved Cannot Infringe the Asserted Patents Under Any Reasonable Nonfrivolous Claim Construction ................................................................................. 9

      (1)  The '195 Patent ..................................................................................... 9

      (2)  The '676 Patent .................................................................................. 13

  B.  The Asserted Patents Are Invalid In View of Prior Art Cited During Prosecution ........... 16

  C.  BelAir Sued Carved For the Improper Purpose of Harassment ........................ 22

  D.  An Appropriate Sanction Should Include Dismissal and Payment of Carved's Attorneys' Fees and Costs ................................................................................. 24

IV.  CONCLUSION ...................................................................................................... 25

`

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927 (Fed. Cir. 2014).......................................14

*Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002)....................5

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006)......................13

*BelAir Electronics, Inc. v. Catalyst Medium Four Inc. d/b/a Smartish*, 6:20-cv-00878
   (W.D. Tex.) ................................................................................................................9

*BelAir Electronics, Inc. v. JEDirect Corp. et al.*, 1:20-cv-03868 (N.D. Ill.)................................9

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) ...................................................9, 11

*CallWave Commc'ns, LLC v. AT&T Mobility*, LLC, No. CV 12-1701-RGA,
   2014 WL 7205657 (D. Del. Dec. 17, 2014)................................................................10

*Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ......................................15

*Clinton v. Jones*, 520 U.S. 681 (1997)......................................................................................24

*Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343 (Fed. Cir. 2002)....................10

*Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605 (7th Cir. 2008).............................................4

*Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776 (Fed. Cir. 2010)........................15

*iLor, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed.Cir.2011)............................................................5

*Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965
   (7th Cir. 2000)...........................................................................................................4

*Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652 (7th Cir. 2003) .....................................4

*Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997) ..........................................................7, 24

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:CV-09-1685,
   2010 WL 3896206 (M.D. Pa. Sept. 30, 2010) ...........................................................11

*Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592
   (N.D. Ill. Aug. 1, 2018)..............................................................................................14

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353 (Fed. Cir. 2002)...................10

*Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006)...................................12

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) ...................................... 5

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) ................. 5, 24

*Scott v. Menard, Inc.*, No. 2:10 CV 442, 2011 WL 2580111 (N.D. Ind. June 28, 2011) .............. 5

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291 (Fed. Cir. 2014) ........................... 5

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. CV 12-1285-RGA, 2015 WL 9462063 (D. Del. Dec. 28, 2015) ...................................................................... 21

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000) .............................. 7

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999) ............................... 10

**Rules**

ABA Model Rule of Professional Conduct 5.4(c) ..................................................................... 24

Fed. R. Civ. P. 11 ......................................................................................................................... 1

Fed. R. Civ. P. 11(b) ................................................................................................................... 4

Fed. R. Civ. P. 11(c)(1) ............................................................................................................... 4

Fed. R. Civ. P. 11(c)(4) ............................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 6, 23

Fed. R. Evid. 201(b)(2) ............................................................................................................ 14

**Treatises**

Robert A. Matthews Jr., *Annotated Patent Digest* § 33:43 (2020) ............................................. 7

Defendant Carved, LLC hereby files this memorandum in support of its Fed. R. Civ. P. 11 motion for sanctions against Plaintiff BelAir Electronics Inc. ("Plaintiff" or "BelAir")[1] (the "Motion") for failing to conduct an adequate pre-filing investigation before bringing suit against Carved for patent infringement, and for filing a frivolous lawsuit for the improper purpose of harassment.

## I.    BACKGROUND

BelAir filed its complaint for patent infringement against Carved on July 27, 2020, alleging infringement of U.S. Patent Nos. 7,941,195 (the '195 patent") and 10,097,676 (the "'676 patent") (collectively, the "Asserted Patents"), both of which are entitled "Protective Mask of Mobile Phone."  (Dkt. 1.)

### A.    The Parties

Defendant Carved is a manufacturer of custom, one-of-a-kind, wood phone cases.  Its phone cases incorporate carved backings made from wood burls stabilized with resin, and are handmade and assembled in Carved's Elkhart, Indiana location.  The following illustrates some examples as taken from BelAir's complaint:



---

[1] References to "Plaintiff" or "BelAir" herein include BelAir's counsel.

(Dkt. 1-1 at 47.)

Plaintiff BelAir does not appear to manufacture or sell any products. BelAir is a holding company that was purportedly assigned the Asserted Patents on June 7, 2019 from Gregory J. Kim. Mr. Kim is BelAir's President, Secretary, Registered Agent, and sole officer. Mr. Kim and BelAir share the same Illinois single family home address, suggesting there is no real separation between Mr. Kim and BelAir. Mr. Kim is not an inventor of the Asserted Patents and allegedly acquired the Asserted Patents from the inventor before assigning to BelAir.[2]

B.    Asserted Patents

According to the Asserted Patents, "the present invention relates to a protective mask of [a] mobile phone and … the present invention comprises an upper cover body and a lower cover body." (Dkt. 10-1 (the '195 patent) at 2:27-31; Dkt. 10-2 (the '676 patent) at 2:32-36.) Because the "protective mask" is made of rigid plastic (*see* '195 patent at 1:60-62 ("[t]he upper and lower cover bodies are integrally formed by means of mold ejection of plastic"); '676 patent at 1:65-67 (same)), and "can sheath a mobile phone therein" of various shapes and sizes (*see* '195 patent at 1:63-64, 3:4-7, Figs. 3 & 7; '676 patent at 2:1-2, 3:10-13, Figs. 3 & 7), friction alone cannot keep the "protective mask" on a mobile phone. Rather, "[a] rear side face of the upper cover body has a plurality of ***flanges*** [that] can be retained at the edge of the front phone housing of the mobile phone." ('195 patent at 2:36-39; '676 patent at 2:41-45 (emphasis added).) These "flanges" are depicted in Figures 3 and 7 as item 21:

---

[2] Carved does not concede that BelAir is the lawful owner of the Asserted Patents with standing to sue for infringement.



(Asserted Patents at Fig. 3 ("flanges" highlighted).)

(Asserted Patents at Fig. 7 ("flanges" highlighted).)

BelAir accuses Carved of infringing independent claim 9 of the '195 patent, and

independent claims 1, 5, 8, and 9 of the '676 patent (collectively, the "Asserted Claims").  (Dkt.

1 at ¶¶ 17, 24.)  All the Asserted Claims explicitly recite "flanges" or analogous "retainer"

limitations as follows:

- "the first mask portion having ***flanges*** to allow the first mask portion to be coupled to the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone" ('195 patent at Claim 9 (emphasis added))

- at least one ***retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space***, wherein the at least one ***retainer*** is retained to the exterior housing at an exterior housing edge when the mask is coupled to the mobile communication device, the at least one ***retainer*** participating in retaining the integrally-formed mask body to the mobile communication device" ('676 patent at Claims 1, 5, 8, 9 (emphasis added))

3

## II.     LEGAL STANDARDS FOR SANCTIONS UNDER FED. R. CIV. P. 11

Rule 11(b) of the Federal Rules of Civil Procedure requires that attorneys certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," (1) that any "pleading, written motion, or other paper" submitted to the court "is not presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) that the claims contained therein are nonfrivolous; and (3) that the allegations and factual contentions have evidentiary support.  Fed. R. Civ. P. 11(b); *see also Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) ("[A]n attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact, and that applies to claims presented to the court 'whether by signing, filing, submitting, or later advocating it.'") (quoting Fed. R. Civ. P. 11(b)).  According to the Seventh Circuit, "[a] frivolous argument is one that is baseless or made without a reasonable and competent inquiry." *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 969 (7th Cir. 2000) (internal quotations omitted).

If a court determines that Rule 11 has been violated, it may impose "an appropriate sanction on any attorney, law firm, or party that violated the rule, or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1); *see also Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 656 (7th Cir. 2003) ("[A] district court may impose sanctions on a party or her counsel (or both), for failing to comply with Rule 11(b).").  "Frivolous or legally unreasonable arguments may be sanctioned by a number of methods, including 'nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other

4

expenses directly resulting from the violation.'"  *Scott v. Menard, Inc.*, No. 2:10 CV 442, 2011 WL 2580111, at *1 (N.D. Ind. June 28, 2011) (quoting Fed. R. Civ. P. 11(c)(4)).

For patent infringement cases, Rule 11 requires, "at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004).  "Because claim construction is a matter of law, an attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be nonfrivolous."  *Antonious v. Spalding & Enflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).  A patent litigation that is dependent upon a frivolous claim construction is, therefore, sanctionable.  *See, e.g.*, *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) ("[T]here is a threshold below which a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed,' and thus warrants Rule 11 sanctions.") (quoting *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed.Cir.2011)); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301-02 (Fed. Cir. 2014) (affirming award of Rule 11 sanctions "based upon … frivolous claim construction arguments" and noting that "a patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement").

## III.  ARGUMENT

### A.  BelAir's Infringement Allegations Against Carved Are Frivolous

#### i.  *BelAir Did Not Know that Patent Claims Should Be Construed Prior to Filing*

BelAir has accused essentially every phone case that Carved has made or ever will make of infringing the Asserted Patents.  (*See* Dkt. 1 at ¶¶ 10-14.)  In support of its allegations, BelAir

attached 67 pages worth of screenshots to its complaint that all fail to show the inside portions of any Carved phone case, focusing instead on their wood carved backings which have no relevance to the Asserted Claims.  (*See* Dkt. 1-1 at 27-93.)  For example:

  

(Dkt. 1 at 30.)

Because BelAir's complaint consists of little more than a scattershot collection of Carved phone case backings, Carved sent BelAir a letter on August 13, 2020 to advise that it fails to state a claim under Fed. R. Civ. P. 12(b)(6).  (Ex. A (Aug. 13, 2020 Letter from Handy to Haller).)  Carved pointed out that "Carved phone cases do not satisfy, *inter alia*, the 'first mask portion having flanges to allow the first mask portion to be coupled to the mobile phone' or 'at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space' limitations." (*Id*.)  Instead of addressing these deficiencies, BelAir responded on August 14, 2020 by disputing whether Rule 11 requires patent claims to be construed before filing a lawsuit (and even characterized it as "offputting" to suggest it does):

> Unfortunately, your conclusory claim (that the Carved cases do not satisfy a particular limitation) is not helpful.  It is also unhelpful (and, quite frankly, offputting) for you to threaten sanctions based on a claim construction theory.  If you have case law finding a violation of Rule 11 based on a claim construction theory at the pleading stage, we would be interested in reviewing.

(Ex. B (Aug. 14, 2020 Email from Haller to Handy).)

6

To the extent BelAir is still looking for Rule 11 case law awarding sanctions "based on a claim construction theory at the pleading stage," the Annotated Patent Digest is a good place to start.  *See* Robert A. Matthews Jr., *Annotated Patent Digest* § 33:43 (2020) ("Rule 11 … requires that before filing a patent infringement lawsuit, counsel for the patent holder must conduct an investigation into the merits of the claim of infringement.  Such an investigation should include an independent examination by counsel of the accused product, an analysis of the patent claims, ***including a claim construction analysis that accounts for the prosecution history***, and a comparison of the construed claims to the accused product.") (emphasis added) (citing cases).  And any after-the-fact investigation into the proper scope of the Asserted Claims would be futile in avoiding sanctions.  *See, e.g.*, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("A patent suit can be an expensive proposition.  Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates.  Performing a ***pre-filing assessment*** of the basis of each infringement claim is, therefore, extremely important.") (emphasis added); *Judin v. United States*, 110 F.3d 780, 785 (Fed. Cir. 1997) ("Rule 11 is not about after-the-fact investigation … after filing the complaint ….").

ii.    *BelAir Practically Admitted that Its Complaint Is Frivolous*

Since BelAir did not know it should have construed the Asserted Claims before suing Carved for infringement, it is unsurprising that BelAir's complaint is wholly frivolous.  For example, Carved cannot infringe under any reasonable construction of the "flanges" or "retainer" claim limitations.[3]

---

[3] This Motion does not identify every noninfringement argument Carved may assert in its defense.

After Carved moved to dismiss BelAir's complaint under Rule 12(b)(6) (*see* Dkt. 9, 10), BelAir submitted photos of an accused Carved phone case in support of its opposition to the motion to dismiss:



(Dkt. 13 at 7.)  Instead of identifying where in these photos the "flanges" or "retainer" limitations are, BelAir balked again:  "Without delving improperly into claim construction at this pleading stage, … Plaintiff contends that the recited limitations of 'flange' or 'retainer' (the only limitations specifically raised by Defendant) are present in Defendant's accused products.  (See, *e.g.*, Figures 3 and 4)."  (Dkt. 13 at 8.)  Given that there is ***nothing*** in Figures 3 and 4 aside from a standard rubberized shell with smooth internal surfaces, BelAir failed to identify "flanges" or "retainers" because there are none – not because doing so would be "improper."[4]

---

[4] As the Asserted Patents explain, "[t]he upper and lower cover bodies [of the protective mask for a mobile phone] are integrally formed by means of mold ejection of plastic." (*See, e.g.*, '195

8

      iii.    *Carved Cannot Infringe the Asserted Patents Under Any Reasonable*
              *Nonfrivolous Claim Construction*

For Carved phone cases to satisfy the "flanges" and "retainer" limitations, BelAir

necessarily construes those terms as meaningless in the Asserted Claims, which is always

improper.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (explaining that

to read limitations out of a claim would "be contrary to the principle that claim language should

not treated as meaningless").  And by doing so, BelAir contends that it holds the patent rights to

virtually every mobile phone case made and sold in the United States – a position that is *per se*

frivolous.[5]

### (1) THE '195 PATENT

Claim 9 of the '195 patent recites the following:

9. A protective mask adapted to be coupled to an exterior housing of a mobile phone
having internal components including circuitry and a battery, which are covered by
the exterior housing, the protective mask comprising:

a first mask portion, molded to conform to the shape of a first portion of the exterior
housing of the mobile phone, the first mask portion ***having flanges*** to allow the

---

patent at 1:60-62.) A hard-plastic phone cover is much different from the rubberized shells
commonplace in phone cases today, which stretch and return to their original shape after
inserting mobile phones. The claimed "flanges" and "retainers," therefore, serve no purpose in
rubberized shells, whereas the hard plastic "protective mask" claimed in the Asserted Patents
need them to couple to a phone. (*See id*. at 2:36-39; claim 9 ("the first mask portion having
flanges to allow the first mask portion to be coupled to the mobile phone to retain the first mask
portion to the first portion of the exterior housing").) Therefore, not only are these limitations
conspicuously absent from Carved phone cases, but it is also irrational to expect Carved to ever
incorporate them.

[5] BelAir has also sued phone case suppliers Catalyst Medium Four Inc. d/b/a Smartish in the
Western District of Texas, and JEDirect Corp. in the Northern District of Illinois. *BelAir
Electronics, Inc. v. Catalyst Medium Four Inc. d/b/a Smartish*, 6:20-cv-00878 (W.D. Tex.);
*BelAir Electronics, Inc. v. JEDirect Corp. et al.*, 1:20-cv-03868 (N.D. Ill.). A cursory review of
the complaints in those actions shows that they are materially the same as the complaint filed
against Carved, and likewise dump a series of website screenshots without identifying or
suggesting where the "flanges" or "retainer" limitations are located. *Compare* (Dkt. 1, 1-1 at 27-
93) *with* (6:20-cv-00878, Dkt. 1, 1-3 and 1:20-cv-03868, Dkt. 1, 1-3). By ignoring these
limitations, BelAir feels at liberty to sue anyone who makes or sells phone cases.

> first mask portion to be coupled to the mobile phone to retain the first mask portion
> to the first portion of the exterior housing so that the first mask portion covers the
> first portion of the exterior housing of the mobile phone.

('195 patent at claim 9 (emphasis added).)  As a threshold matter, the plain language of claim 9 requires a plurality of flanges, not just one – no matter how "flanges" is construed as a matter of law.  *See, e.g.*, *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("At the outset, the claim recites 'support wires' in the plural, thus requiring more than one welded 'support wire.'"); *Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1347–49 (Fed. Cir. 2002) (holding that claims reciting "electronic circuit boards" "clearly require multiple circuit boards in view of their plural language").  This is consistent with the '195 patent specification, which describes "[a] rear side face of the upper cover body 20 [that] has a ***plurality of flanges*** 21, as shown in FIG. 3."  ('195 patent at 2:36-38 (emphasis added).)

Nothing in Carved's phone cases (*see supra* at 8 (citing Dkt. 13 at 7)) can reasonably be interpreted as a plurality of "flanges."  The rubberized shell is one continuous piece.  So, no matter how the term "flanges" is construed, Carved phone cases cannot meet this limitation. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

In addition, by expressly limiting the "first mask portion" as "***having*** flanges," the "flanges" limitation cannot be construed as superfluous and redundant to the claimed "first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone …."  *See CallWave Commc'ns, LLC v. AT&T Mobility*, LLC, No. CV 12-1701-RGA, 2014 WL 7205657, at *2 (D. Del. Dec. 17, 2014) ("The Federal Circuit has made clear that patent 'claims are interpreted with an eye toward giving effect to all terms in the claim,' and 'physical structures and characteristics specifically described in a claim' should not be

10

interpreted as 'merely superfluous.'") (quoting *Bicon, Inc.*, 441 F.3d at 950); *Kimberly-Clark*

*Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:CV-09-1685, 2010 WL 3896206, at *10

(M.D. Pa. Sept. 30, 2010) (construing claim terms "having" and "has" in accordance with "its

ordinary meaning … to mean 'possesses'").  As illustrated below, the intrinsic evidence is

consistent with the plain language of claim 9 which recites "a first mask portion molded to

conform to the shape of a first portion of the exterior housing of the mobile phone" (highlighted

in blue), which is further limited as "***having flanges*** to allow the first mask portion to be coupled

to the mobile phone to retain the first mask portion to the first portion of the exterior housing

…." (highlighted in red):



| |
|---|
| 9. A protective mask … comprising:<br><br>**a first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone**,<br><br>**the first mask portion having flanges to allow the first mask portion to be coupled to the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone**. |

('195 patent at claim 9 and Figs. 5 & 6 ("first mask portion" limitations highlighted in blue and

"flanges" limitations highlighted in red).)  Therefore, the claimed "flanges" are a separate

11

limitation that the "first mask portion molded to conform to the shape of a first portion of the exterior housing of the phone" must possess or "have."

To further demonstrate how frivolous BelAir's infringement argument is, dependent claim 10 recites a "second mask portion" that is broader in scope than the "first mask portion" in claim 9:

| Claim 9 ("first mask portion") | Claim 10 ("second mask portion") |
|---|---|
| 9. A protective mask … comprising:<br><br>a first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, *the first mask portion having flanges to allow the first mask portion to be coupled to the mobile phone* to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone.<br><br>('195 patent at claim 9 (emphasizing "flanges" term).) | 10. The protective mask of claim 9, further comprising<br>a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, *the second mask portion adapted to be coupled to the mobile phone* to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone.<br><br>('195 patent at claim 10 (emphasizing "adapted" term).) |

Claim 10 only requires the "second mask portion" to be "*adapted to be coupled* to the mobile phone," whereas claim 9 requires the "first mask portion" to "*hav[e] flanges to allow the first mask portion to be coupled* to the mobile phone …."  Because "adapted to be coupled" is broader in scope than "having flanges to allow the first mask portion to be coupled," the claimed "flanges" must be construed as a particular structure on the surface of the "first mask portion" rather than some otherwise generic "adaptation."  *See, e.g.*, *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("[T]he terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous."); *Applied Med. Res. Corp. v. U.S. Surgical*

*Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings ….).

Hence, under no reasonable claim construction can the accused Carved phone cases meet the "flanges" limitation.  As BelAir's own proffered photographs make clear, Carved phone cases surround a mobile phone, and there is nothing – flanges or otherwise – on their smooth interior surfaces:

 

(*See supra* at 8 (closeup of BelAir's Figures 4 and 6).)  A phone simply sits within the rubberized shell because rubber can stretch and retract – no "flanges" are required for "coupling."

### (2) THE '676 PATENT

Carved likewise cannot infringe the Asserted Claims of the '676 patent absent a frivolous claim construction that reads out the "retainer" limitations.

U.S. Patent App. No. 13/094,428 (the "'428 application") issued as the '676 patent and is a continuation of U.S. Patent App. No. 11/673,237 which issued as the '195 patent.  As is commonplace for continuations, the applicant tried to get broader claims in the '428 application.  For example, original claim 5 in the '428 application recited the following "retainer" limitation, which was much broader in scope compared to the '195 patent's "flanges":

[original claim] 5. A protective mask adapted to be coupled to an exterior housing of a mobile phone, comprising:

•        a mask portion molded to conform to the shape of a first portion of the mobile phone exterior housing, the first mask portion ***having at least one retainer which cooperates with the mobile phone exterior housing to retain the mask portion to the first portion of the mobile phone exterior housing*** so that the mask portion covers the first portion of the mobile phone exterior housing; and

•        said mask portion including an opening to permit access to a feature of the mobile phone,

wherein said mask portion is retained to the mobile phone exterior housing.

(Ex. C ('428 application, Specification, Aug. 26, 2011) at 6 (highlighting added).)[6]  The

applicant, however, ended up with claims of much narrower scope after authorizing the

following examiner's amendment to all pending independent claims prior to allowance:

…

access to at least the user input and output interfaces; and

at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space, wherein the at least one retainer is retained to the exterior housing at an exterior housing edge when the mask is coupled to the mobile communication device, the at least one retainer participating in retaining the integrally-formed mask body to the mobile communication device.

---

[6] Carved asks the Court to take judicial notice of all exhibits to this Motion that attach patents and documents from patent application file histories. *See, e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is … well-established that a court may take judicial notice of patents or patent applications."); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018) ("[T]he Court may take judicial notice of the … Patent's prosecution history because it is a matter of public record and not reasonably subject to dispute.") (citing Fed. R. Evid. 201(b)(2)).
.

(*See* Ex. D ('428 application, Notice of Allowability, July 27, 2018) at 3, 6, 7-10 (highlighting added).)   The above "retainer" limitation is recited verbatim in all Asserted Claims in the '676 patent.   ('676 patent at claims 1 (3:55-63), 5 (4:32-40), 8 (5:3-11), 9 (6:7-15).)

As the applicant explained during prosecution, "Support for a flange/retainer extending laterally into the interior space of the mask body … is found in the Application, for example, in FIGS. 3 and 7 (showing flanges 21, and at least a piece of the flanges, extending and protruding laterally inward into the mask body space) and FIGS. 5-6."   (Ex. E ('428 application, Amendment, Oct. 26, 2015) at 10 (highlighting added).)   In other words, the plain language of the Asserted Claims in the '676 patent are limited to "retainers" or "flanges" that "extend[] and protrude[] laterally inward into the mask body space" such as those illustrated in Fig. 3 below:



(Asserted Patents at Fig. 3 (blowup of "flange 21").)   *See Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010) ("Patent claims function to delineate the precise scope of a claimed invention and to give notice to the public, including potential competitors, of the patentee's right to exclude.   This notice function would be undermined, however, if courts construed claims so as to render physical structures and characteristics specifically described in those claims superfluous."); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373–74 (Fed. Cir. 2004) (holding that for "ordinary, simple English words whose

meaning is clear and unquestionable … [t]hey mean exactly what they say" and therefore "we construe the claim as written, not as the patentees wish they had written it.").

As BelAir volunteered, Carved phone cases have nothing "protruding laterally inward … and into the … mask body interior space," let alone a "retainer, having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space":



(*See supra* at 8 (closeup of BelAir's Figure 4 with cross-sectional view of Carved phone case "interior space" highlighted).)  Therefore, under no reasonable claim construction can the accused Carved phone cases meet this limitation.[7]

B.      The Asserted Patents Are Invalid In View of Prior Art Cited During Prosecution

Continuation U.S. App. No. 16/154,515 (the "'515 application") was filed on October 10, 2018, claiming priority to the '428 application.  On March 27, 2020, Gregory J. Kim (BelAir's President, Secretary, Registered Agent, and sole officer) and his prosecuting attorney conducted a telephonic interview with the examiner to discuss prior art U.S. Patent Nos. 6,141,417 to Lopez ("Lopez") and 5,383,091 to Snell ("Snell").  (*See* Ex. F ('515 application, Interview Summary,

---

[7] It is also unclear how BelAir alleges that Carved infringes the "at least one retainer is retained to the exterior housing at an exterior housing *edge*" limitation. A phone sits within the rubberized shell, which partially surrounds the front of the phone. There is no distinct "edge" at which the rubberized shell is "retained."

Apr. 1, 2020) at 2.)  Because the examiner disagreed with Mr. Kim's proposed differences

between the invention and cited prior art (*Id*.), Mr. Kim filed a request that the '515 application

be expressly abandoned.  (*See* Ex. G ('515 application, Express Abandonment, Apr. 11, 2020).)

Despite Mr. Kim's request to abandon the '515 application before any further rejections could be

filed, the examiner issued a Final Rejection on Apr. 15, 2020 prior to abandonment.  (Ex. H

('515 application, Final Rejection, Apr. 15, 2020); Ex. I ('515 application, Abandonment, Apr.

15, 2020).)

       Of relevance to this Motion, the examiner found pending claims 10 and 11 anticipated by

Lopez.[8]  (Ex. H at 8-11 (highlighting added); *see also* Ex. J ('515 application, Amendments to

Claims (pending claims 10 and 11 highlighted)); Ex. K (U.S. Patent No. 6,141,417 to Lopez).)

The attached Exhibit L provides a table comparing pending claims 10 and 11 in the '515

application alongside the Asserted claim limitations.[9]  (*See* Ex. L (claim chart).)  As Exhibit L

shows, the limitations of rejected claims 10 and 11 are materially similar to those in the Asserted

Claims.[10]  (*See id*.)

       The examiner rejected pending claims 10 and 11 under 35 U.S.C. § 102(a) as anticipated

by Lopez because Lopez discloses:

> •   "([fig 1]) a protective mask molded for frictional retention to an exterior
> housing of a mobile phone ([fig 3] mobile telephone 300) having user input and output
> interfaces ([fig 4D]), and internal components including circuitry and the battery when
> the mobile phone is fully assembled and ready for use ([fig 3 & 4D]) …."  (Ex. H at 8.)

---

[8] The examiner's rejection for claim 10 of the '515 application refers back to his reasoning for
rejecting claim 1. (*See* Ex. H at 10 (noting "Claim 10, see claim 1 for the rejection").)

[9] Some Asserted Claim limitations are listed out of order to better correspond to the claim
language in pending claims 10 and 11 of the '515 application.

[10] Predictably, the examiner rejected pending claims 10 and 11 on nonstatutory double patenting
grounds because they were not patentably distinct from the '195 patent and the '676 patent
claims. (*See* Ex. H at 7 (highlighting added).)

- "an integrally-formed mask body and contoured to conform (col 1: 53-54, holder may be formed from a single piece of material, 58-60, holder may also serve the function of providing a user with a better-defined tactual grip on the mobile telephone than is obtained by holding the mobile telephone alone in the user's hand) and frictionally-fit tightly against the exterior shape of the exterior housing ([fig 4B, 4C, 4D], col 1: 58-60, holder may also serve the function of providing a user with a better-defined tactual grip on the mobile telephone alone in the user's hand))."  (*Id*. at 8-9.)

- "an inner surface of the integrally-formed mask body defining an interior space of the integrally-formed mask body and conforming to and in substantially continuous surface-to-surface contact with the exterior shape of the exterior housing ([fig 4B, 4C, 4D])."  (*Id*. at 9.)

- "at least a first opening defined by the integrally-formed mask body permitting user access to at least the user input and output interfaces ([fig 4D])."  *Id*.

- "the protective mask of claim 10, further comprising at least one inwardly-protruding flange forming a portion of the mask and engaging an edge of the exterior housing when the protective mask is coupled to the mobile phone, the flange-and-edge engagement participating in retaining the mask to the mobile phone ([fig 4A] col 3:24-26, securing pin 110 flexibly engages and snaps into securing notch 312 on top rear of main body 302 of mobile telephone 300)."  *Id*. at 11.

To further summarize Lopez, Lopez discloses "a cradle unit of a mobile telephone holder" that comprises "securing pin 110 [that] is mounted on extension 108 so that securing pin 110 flexibly engages and snaps into securing notch 312 op top rear of main body 302 of mobile telephone 300, as mobile telephone 300 comes against back portion 102 of cradle unit 100."  (Ex. K at 2:51-52; 3:23-28.)  Figure 1 in Lopez illustrates the "cradle unit 100" with the flange or "securing pin 110":



(Ex. K at Fig. 1 (securing pin 110 that is mounted on extension 108 highlighted in red).)  Figure 4A illustrates "mobile telephone 300" being inserted into "cradle unit 100" by first placing "main body 302 of mobile telephone 300 into securing pocket 112" that is formed in part by "front wall 114":



19

(Ex. K at Fig. 4A (securing pin 100 highlighted in red); *see also id.* at 2:55-58; 3:18-21.)  As shown in Figures 4C and 4D, the flange or "securing pin 110" then "flexibly engages and snaps into securing notch 312 on top rear of main body 302 of mobile telephone 300, as mobile telephone 300 comes against back portion 102 of cradle unit 100."  (Ex. K at Figs. 4C (coupled securing pin 100 highlighted *supra*) & 4D; *see also id.* at 3:21-28.)

Carved agrees with the examiner's determination that Lopez anticipates then-pending claims 10 and 11 of the '155 application, which in turn anticipates the Asserted Claims given that they are materially similar.[11]

Finally, and despite BelAir's frivolous position that "flanges" (plural) as recited in claim 9 of the '195 patent does not require more than one "flange," the examiner rejected applicant's arguments that Lopez could not be modified to include features of Snell.  (*See* Ex. H at 4 (highlighting added).)  Therefore, Lopez could be combined with features of Snell's "casing 20" that includes "inwardly protecting securement member 23 which fits in the recess 22 along the parting line on the telephone."  (Ex. M at 2:59-61.)  Snell further discloses that "securement member 23 may be in the form of a continuous protuberance corresponding for engagement into a likewise continuous recess formed on the telephone housing [or] individual protuberance members 23a, 23b, 23c, and 23d [may be] formed at intervals along the interior of the upstanding wall surface W of the casing 20 to support the casing on the telephone by virtue of their engagement in the parting line recess 22."  (*Id.* at 2:61 to 3:2.)  Snell's Figure 1 shows a perspective view of the phone "casing 20" with a phone coupled inside, and Figures 4 and 6 show cross-sectional views that highlight the multiple flanges or "protuberance members":

---

[11] BelAir presumably agrees with the examiner's rejections as well, which would explain why Mr. Kim tried to abandon the '155 application before the examiner's Final Rejection could be issued.



(Ex. M at Figs. 1, 4 & 6 ("protuberance members 23A, 23B, 23C, and 23D highlighted").)

Therefore, claim 1 of the '195 patent is invalid even under a proper construction that requires multiple "flanges."

Despite having pre-suit knowledge of its patent portfolio's prosecution history, including Mr. Kim's rush to abandon the '515 application in an unsuccessful bid to avoid the examiner's Final Rejection under 35 U.S.C. § 102(a) over Lopez, BelAir still brought baseless claims for patent infringement against Carved.  Such conduct is yet additional grounds for sanctioning BelAir.[12]  *See Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. CV 12-1285-RGA, 2015 WL 9462063, at *4 (D. Del. Dec. 28, 2015) (awarding fees under 35 U.S.C. §

---

[12] This Motion discusses U.S. Patent No. 6,141,417 to Lopez and U.S. Patent No. 5,383,091 to Snell as examples of invalidating prior art that BelAir had pre-suit knowledge of, and is not intended to cover anywhere near an exhaustive recitation of the grounds of invalidity that Carved may assert in its defense, including additional grounds of invalidity based on the same Lopez and Snell references.

285 as of date plaintiff "had full notice that its case was objectively baseless in light of the invalidating [] prior art").

      C.     <u>BelAir Sued Carved For the Improper Purpose of Harassment</u>

As demonstrated above, BelAir's case against Carved is wholly frivolous and warrants sanctions under Rule 11.  And because it is so objectively frivolous, it is no surprise that BelAir filed this lawsuit for the improper purpose of harassment to coerce Carved into paying a nuisance-value settlement.

Of particular concern is BelAir's reliance and seeming deference to its "patent monetization business advisor," TigerIP Ventures, and its Chief Executive Officer, Mr. Charles W. Chamberlain.  For example, Mr. Timothy J. Haller, BelAir's counsel of record in this case, first reached out to Carved on December 17, 2019 to "open a dialogue for Carved to obtain a full release and license under the BelAir Portfolio."  (*See* Ex. N (Dec. 17, 2019 Letter from Haller to Webber) at 1-2.)  In addition to himself, Mr. Haller advised that Carved could reach out to "Mr. Charles Chamberlain of TigerIP Ventures (BelAir's IP Monetization and Investment Advisor)" by phone or email to discuss further.  (*Id*. at 2.)  Then, on March 9, 2020, Mr. Haller contacted Carved again "to open an amicable dialogue for Carved to obtain a full release and license under the BelAir Portfolio [so] this matter can be quickly resolved in an efficient manner outside of litigation."  (Ex. O (Mar. 9, 2020 Letter from Haller to Webber) at 2.)  Again, Mr. Haller advised that Mr. Chamberlain of TigerIP Ventures may be contacted "to discuss the contents of our letters, the possibility of a license, and any other questions you may have regarding BelAir or the BelAir Portfolio."  (*See id*.)  Presumably frustrated by Carved's disinterest in licensing a patent portfolio it has no use for, Mr. Chamberlain emailed Carved directly on April 17, 2020 to threaten litigation unless Carved agrees to a "discounted pre-litigation offer":

22

> We have not heard from Carved regarding the Belair patent portfolio, the exemplary infringing product(s) and the representative claims provided in previous correspondences. We want to be sensitive to the current situation regarding COVID19; however, we will move forward with litigation as your silence only confirms our thoughts on infringement. Furthermore, our attempts to engage in good faith discussions outside the courts, and your lack of responding, will be reflected in the complaint as well as the willful violation of US intellectual property laws. Belair is a reasonable client and a discounted pre-litigation offer can be had if the parties can enter into discussion **by Friday, April 24, 2020**. ***The choice is yours***.

(Ex. P (Apr. 17, 2020 Email from Chamberlain to Webber) (emphasis added and in original).) It was only after this threatening email was ignored that BelAir decided it had no choice but to put additional pressure on Carved by filing this lawsuit on September 7, 2020. (*See* Dkt. 1.) Before filing, BelAir decided it should at least purchase an accused product, which it (finally) did on May 6, 2020 – well after its repeated licensing inquiries and overt threats of litigation. (*See* Dkt. 13-4 (Email from Carved confirming BelAir's purchase of iPhone Xs Wood+Resin Case – Hildagard (Black & White, 314663)).)

After the parties briefed Carved's motion to dismiss the complaint under Rule 12(b)(6), Mr. Chamberlain reached out to Carved's counsel of record, John E. Handy, directly via email on October 20, 2020. (Ex. Q (Oct. 20, 2020 Email from Chamberlain to Handy).) Mr. Chamberlain advised that a "flagship deal" to BelAir's patent portfolio could be had "while it still exists," and that "***we believe a flagship deal in the five figures can be had with Carved*** if we could reach agreement promptly. If interested, we should schedule a call to discuss soon." (*Id*. (emphasis added).) This only confirms that BelAir is interested in a nuisance-value settlement and has no desire to move forward on the merits, which as demonstrated in this Motion is sorely lacking.

There is nothing to indicate that Mr. Chamberlain is a lawyer. According to what Carved presumes is his LinkedIn profile, Mr. Chamberlain does not hold a J.D. *See* Charles W.

Chamberlain, LINKEDIN, https://www.linkedin.com/in/charleswchamberlain/ (last visited Nov. 27, 2020).  Yet, Mr. Chamberlain has been given the lead in pressuring Carved to license the Asserted Patents, which raises ethical concerns.  For example, the ABA Model Rule of Professional Conduct 5.4(c) states that "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."  And in August 2020, the ABA House of Delegates adopted "Best Practices for Third-Party Litigation Funding" that recommends:

> Day-to-Day Case Management and Strategic Decisions (Party Control): The litigation should be managed and controlled by the party and the party's counsel. Limitations on a third-party funder's involvement in, or direct or indirect control of or input into (or receipt of notice of), either day-to-day or broader litigation management and on all key issues (such as strategy and settlement) should be addressed in the funding agreement.

(Ex. R (ABA Best Practices for Third-Party Litigation Funding) at 15.)

Given the extensive control over "day-to-day or broader litigation management on … issues such as strategy and settlement" that Mr. Chamberlain has been afforded, BelAir's interest in the merits has clearly taken a back-seat, and Carved asks the Court to sanction BelAir for giving Mr. Chamberlain extensive, if not *carte blanch*, control over soliciting a nuisance-value settlement from Carved.  The only logical inference is that this baseless lawsuit was filed for the express purpose of helping Mr. Chamberlain harass Carved into writing a check – a sanctionable "improper purpose" under Rule 11.

D.    An Appropriate Sanction Should Include Dismissal and Payment of Carved's Attorneys' Fees and Costs

The Court has discretion to impose an appropriate sanction under Rule 11.  *Judin*, 110 F.3d at 785.  Rule 11 sanctions "may be set at a level 'sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'"  *Raylon, LLC*, 700 F.3d at 1370 (quoting *Clinton v. Jones*, 520 U.S. 681, 710 n.42, (1997)).  Here, Carved submits that dismissal

24

of the action with prejudice is an appropriate sanction necessary to deter comparable conduct. Carved further submits that an appropriate sanction should include its reasonable attorneys' fees and costs for defending this baseless suit.

## IV.    CONCLUSION

For the foregoing reasons, BelAir's complaint against Carved is objectively baseless and was only filed to harass and pressure Carved into a nuisance-value settlement in violation of Rule 11.  Carved respectfully requests that the Court dismiss BelAir's complaint with prejudice and award Carved its reasonable attorneys' fees and costs for defending this baseless suit.


Respectfully submitted,

Dated:  December 27, 2020            IP ADVANCED LLC

*/s/ John E. Handy*
John E. Handy (*admitted pro hac vice*)
8609 Westwood Center Drive, Suite 110
Tysons Corner, VA 22182
Tel:  (703) 853-1800
Fax:  (781) 365-9499
jhandy@ipadvanced.com

*Attorney for Defendant Carved, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on all counsel of record via

the Court's ECF system.

/s/ *John E. Handy*
John E. Handy