EXHIBIT E

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Patent Application of:

Kuan-Lin Peng                                 Attorney Docket No.  GKM-71608US03

Serial No.  13/094,428                        Group Art Unit: 2645

Filed: April 26, 2011                         Examiner: Dinh P. Nguyen

Title:   PROTECTIVE MASK OF MOBILE PHONE

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT and
## REQUEST FOR CONTINUING EXAMINTION UNDER 37 C.F.R. 1.114

In response to the final Office Action mailed April 24, 2015, a request for an RCE is concurrently filed with this Amendment made pursuant to 37 C.F.R. 1.114(c).

Amendments to the claims begin on page 2;

An Examiner Interview Summary begins on page 8;

Applicant's Remarks begin on page 10.

1

In re Patent Application of:                                                 Page 2 of 17
Kuan-Lin Peng
Serial No. 13/094,428

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1. (Currently Amended) A protective mask <u>molded for frictional retention to an exterior housing of</u> ~~adapted to be coupled to~~ a mobile phone having user input and output interfaces, <u>and</u> internal components including circuitry and a battery, <u>wherein the</u> ~~and an~~ exterior housing completely <u>encloses</u> ~~enclosing~~ the circuitry and <u>the</u> battery when the mobile phone is fully assembled and ready for use, the exterior housing having <u>an exterior shape formed by</u> a back surface, ~~a front surface,~~ and <u>at least portions of</u> opposed side surfaces ~~therebetween~~, the protective mask comprising:

an integrally-formed mask body <u>molded and contoured to conform and frictionally-fit tightly against the exterior shape of the exterior housing</u> ~~separate and distinct from the fully-assembled mobile phone and exterior housing~~;

~~an outer surface of the mask body which overlies, contours to and covers the back surface and at least two of the opposed side surfaces of the exterior housing;~~

an inner surface of the mask body <u>defining an interior space of the mask body and</u> conforming to and in substantially continuous surface-to-surface contact with the <u>exterior shape</u> ~~back surface and the at least two opposed side surfaces~~ of the exterior housing<u>,</u> with no substantial space between the inner surface of the mask body and the <u>exterior shape of the</u> exterior housing; <u>and</u>

at least one opening defined by the mask body permitting user access to at least the user input and output interfaces<u>.</u> ~~; and~~

- ~~at least one inwardly protruding flange forming a portion of the inner surface of the mask body and engaging an edge of the exterior housing when the mask is coupled to the mobile phone, the flange-and-edge engagement participating in retention of the mask body to the mobile phone.~~

2. (Previously Presented) The protective mask of claim 1, wherein the mask body

2

In re Patent Application of:                                      Page 3 of 17
Kuan-Lin Peng
Serial No. 13/094,428

further includes indicia selected from the group consisting of text, graphic elements and
combinations thereof.

   3.   (Previously Presented) The protective mask of claim 1, wherein the mask body
includes at least one feature opening to permit access to at least one feature of the mobile phone.

   4.   (Currently Amended) The protective mask of claim 1, wherein the mask body includes
a socket opening corresponding to a socket of the mobile phone and permitting ~~so that~~ a user to
~~can conveniently~~ plug a power supply into the socket to charge the mobile phone.

   5.-11.   (Canceled)

   12.   (Currently Amended) A protective mask molded for frictional retention to an exterior
housing of, and adapted to be coupled to, a mobile communication device having~~,~~ internal
components including circuitry and a battery, wherein the ~~an~~ exterior housing completely
encloses ~~enclosing~~ the circuitry and battery when the mobile communication device is fully
assembled and ready for use, and wherein the exterior housing has an exterior shape including a
back ~~first~~ face~~, a second face~~ and at least portions of opposed side surfaces ~~between the first and~~
~~second faces,~~ the protective mask comprising:
           an integrally-formed mask body molded and contoured to conform and
frictionally fit to the exterior shape of the exterior housing ~~separate and distinct from the fully~~
~~assembled mobile communication device and exterior housing~~;
           ~~an outer surface of the mask body which overlies, contours to and covers at least~~
~~portions of the first face and at least two of the side surfaces of the exterior housing~~;
           an inner surface of the mask body defining an interior space of the mask body and
conforming to, and in substantially continuous surface-to-surface contact with, the exterior shape
~~the at least portions of the first face and the at least two side surfaces~~ of the exterior housing in
overlying and protecting relationship, without a substantial gap between the inner surface of the
mask body and the exterior shape of the exterior housing, the mask body defining an opening
enabling the mask to be placed over the exterior shape ~~said exterior housing~~ in ~~the~~ overlying and

3

In re Patent Application of:                                           Page 4 of 17
Kuan-Lin Peng
Serial No. 13/094,428

protecting relationship; and

   at least one retainer <u>having an extension</u> protruding <u>laterally</u> inward from the
mask body <u>and toward and into the mask body interior space</u> ~~to a distal end~~ , wherein the at least
one retainer ~~and which~~ is retained to the exterior housing at an exterior housing edge when the
mask is coupled to the mobile communication device, the at least one retainer participating in
retaining the mask body to the mobile communication device.


  13. (Canceled)


  14. (Previously Presented) The protective mask of claim 12, wherein the mobile
communication device includes a socket for battery charging and the mask body defines at least
a battery-charging socket opening permitting a power supply to be connected to the socket.


  15. (Previously Presented) The protective mask of claim 12, wherein the mobile
communication device includes an earphone-connection socket and the mask body defines at
least one earphone-connection socket opening permitting an earphone to be connected to the
earphone-connection socket.


  16. (Previously Presented) A mask for attachment to a hand-held mobile phone, the
mobile phone having user input and output interfaces, internal components including circuitry
and a battery, and an exterior housing completely enclosing the circuitry and battery when the
mobile phone is fully assembled and ready for use, the exterior housing including a first face, a
second face and opposed side surfaces there between, the mask comprising:
   an integrally-formed mask body <u>molded to conform to a shape of the exterior
housing  and defining a mask body interior space</u> ~~, the mask body being separate and
distinct from the fully-assembled mobile phone and exterior housing~~;
   inner and outer surfaces, the surfaces defining at least one opening in the mask
body providing access to at least one of the user input and output interfaces, the mask
body being configured such that, when the mask is attached to the mobile phone, the
mask body is coextensive with, contours to and overlies at least portions of ~~at least two of~~

4

In re Patent Application of:                                          Page 5 of 17
Kuan-Lin Peng
Serial No. 13/094,428

the opposed side surfaces, wherein there is no substantial space between the inner surface

of the mask body and exterior housing;

~~at least one flange positioned on the mask body to extend inward and providing~~

~~sufficient frictional engagement with an edge of the exterior housing to attach the mask to~~

~~the phone~~.


17-33. (Canceled)


34. (Currently Amended)  A protective mask molded for frictional retention to an

exterior housing of a fully assembled mobile communication device having user input and output

interfaces, the mobile communication device further having internal components including

circuitry and a battery completely enclosed by the exterior housing, and the exterior housing

having an exterior shape formed by a ~~contoured~~ back surface and at least portions of ~~at least two~~

opposed side surfaces, the protective mask comprising:

an inner surface closely conforming to the exterior shape of the exterior housing

~~housing contour~~ and in substantially continuous surface-to-surface contact with the exterior

shape ~~back surface and the at least two opposed side surfaces~~ of the exterior housing, with

substantially no space between the inner surface of the mask and the exterior shape ~~housing~~

when the protective mask is retained to the exterior housing, the mask being molded, integrally

formed, contoured and sized to fit tightly against the exterior shape of the exterior housing,

thereby ~~the sizing and tight fit frictionally~~ providing retention of the mask to the exterior

housing; and

at least one opening defined by the mask permitting user access to at least the user

input and output interfaces.


35. (Currently Amended)  The protective mask of claim 34, further including at least one

inwardly-protruding flange forming a portion of the mask and extending inward toward the

mobile communication device to ~~engaging~~ engage an edge of the exterior housing when the

mask is attached to the mobile communication device, the flange-and-edge engagement retaining

the mask to the mobile communication device.

In re Patent Application of:                                          Page 6 of 17
Kuan-Lin Peng
Serial No. 13/094,428

36.  (Currently Amended)  The protective mask of claim 34, wherein the ~~protective~~ mask
further includes indicia selected from the group consisting of text, graphic elements and
combinations thereof.

37.  (Previously Presented) The protective mask of claim 34, wherein the mask includes
at least one feature opening to permit access to at least one feature of the mobile communication
device.

38.  (Currently Amended) The protective mask of claim 34, wherein the mask includes a
socket opening corresponding to a socket of the mobile communication device, permitting ~~so that~~
a user to ~~can conveniently~~ plug a power supply into the socket to charge the mobile
communication device.

39. (Currently Amended) A protective mask adapted to be quickly coupled to, and
quickly decoupled from, a fully-assembled mobile communication device having user input and
output interfaces and an exterior housing, the exterior housing having an exterior shape formed
by a back surface, ~~a front surface,~~ and at least portions of opposed side surfaces ~~therebetween,~~
the protective mask comprising:

~~an outer surface which overlies the back surface and at least two of the opposed~~
~~side surfaces;~~

an inner surface in substantially continuous surface-to-surface contact with the
exterior shape ~~back surface and the at least two opposed side surfaces,~~ with substantially no
space between the inner surface and the exterior shape ~~housing;~~

at least one opening defined by the mask permitting user access to at least the user
input and output interfaces; and

at least one inwardly-protruding flange forming a portion of the mask and
engaging an edge of the exterior housing when the mask is coupled to the mobile communication
device, the flange-and-edge engagement at least participating in retaining the mask to the mobile
communication device,

6

In re Patent Application of:                                    Page 7 of 17
Kuan-Lin Peng
Serial No. 13/094,428

wherein during initial engagement of the mask to the mobile communication device, the exterior housing defines a generally planar position which can be angularly oriented relative to the mask, and wherein the exterior housing can be oriented into ~~which can include~~: a planar positions rotated about a longitudinal axis of the mask~~,~~; and a planar positions rotated about an axis normal to the longitudinal axis of the mask.

40.     (New)  The protective mask of Claim 1, further comprising at least one inwardly-protruding flange forming a portion of the mask body and having a lateral extension protruding into the interior space of the mask body and toward the mobile phone to engage an edge of the exterior housing when the mask is coupled to the mobile phone, the flange-and-edge engagement participating in retention of the mask body to the mobile phone.

41.     (New) The protective mask of claim 16, further comprising at least one inwardly-protruding flange forming a portion of the mask and engaging an edge of the exterior housing when the mask is coupled to the mobile phone, the flange-and-edge engagement participating in retaining the mask to the mobile phone.

In re Patent Application of:                                              Page 8 of 17
Kuan-Lin Peng
Serial No. 13/094,428

## INTERVIEW SUMMARY

<u>Date and Type of Interview</u>

A combined in-person and telephonic interview was conducted on June 11, 2015.

<u>In Attendance</u>

    (1) Examiner Dinh P. Nguyen

    (2) John E. Munger (Registration No. 37,685) (via telephone)

    (3) Michael P. Mazza (Registration No. 34,092) (via telephone)

    (4) Assignee Gregory Kim (in person)

<u>Exhibits and/or Demonstrations</u>

A panel of acrylic material.

<u>Identification of Claims Discussed</u>

Independent claims 1, 5, 8, 12, 16, 27, 34 and 39

<u>Identification of Prior Art Discussed</u>

US 6,201,867 (Koike)

US 5,923,752 (McBride)

<u>Proposed Amendments</u>

See below.

<u>Principal Arguments and Other Matters</u>

As in the attached interview agenda.

In addition, there was discussion of a possible claim amendment.  It was discussed that the "at least one inwardly-protruding flange" could be more specifically claimed so as to extend inward into an interior space of the mask body.  The term horizontally (now "laterally") was discussed to describe the inward direction of the flange or retainer.  Such a limitation is not present in Koike at least because snap members 7 do not extend inward in such a manner.

The rigidity of the acrylic panel material (Koike col. 2, lines 51-52) was demonstrated to show the fact that Koike's snap members 7 must temporarily flex toward the phone to engage a recess 9 connecting upper and lower body covers 4, 5 to each other and, alternatively, to disconnect upper and lower body covers 4, 5 indicative that there must be spacing between body cover 3 and phone 2.

In re Patent Application of:                                      Page 9 of 17
Kuan-Lin Peng
Serial No. 13/094,428

Results of Interview

  The Examiner indicated that the possible claim amendment described above would differentiate the claimed invention from each of (1) Koike and (2) the combination of Koike and McBride, provided that a further search by the Examiner did not identify any further relevant prior art.  Assignee is to submit an appropriate response including by means of the After Final Consideration Pilot 2.0.

In re Patent Application of:                                                    Page 10 of 17
Kuan-Lin Peng
Serial No. 13/094,428

## REMARKS

Assignee thanks the Examiner for his ongoing work in connection with this patent
application and for the courtesy of conducting the interview on June 11, 2015. The status of the
claims is that Claims 1-4, 12, 14-16 and 34-41 are presently pending in the Application. Claims
5-11 and 17-33 have been cancelled without prejudice, and Claims 40-41 are new.

### Amendments

In the claims, independent Claims 1, 12, 16, 34, and 39 are amended as indicated.
Support for the language "molded to conform to a shape of the exterior housing" is found, for
example, in the Application at page 2, lines 16-17 and page 3, lines 20 and 28.

The limitation relating to flanges in previously presented claims 1 and 16 has been
deleted from claims 1 and 16, and is now presented in new claims 40 (dependent on claim 1) and
41 (dependent on claim 16). Support for the subject matter recited in claim 1 without a flange
limitation may be found at least in FIG. 3 and at page 3, line 28 to page 4, line 4.

Support for a flange/retainer extending laterally into the interior space of the mask body
in Claims 12 and 39-41 is found in the Application, for example, in FIGS. 3 and 7 (showing
flanges 21, and at least a piece of the flanges, extending and protruding laterally inward into the
mask body space) and FIGS, 5-6. No new matter is added. Entry of the amendments is
requested.

### Claim Rejections

### Section 103 Rejections

Previously presented claims 1-25, 27-32 and 34-39 were rejected under 35 U.S.C. §
103(a) as being obvious based on U.S. Patent No. 6,201,867 (Koike) in view of U.S. Patent No.
5,9237,526,594 (McBride). As now amended, independent claims 1 and 34 now recite a
"protective mask molded for frictional retention to an exterior housing of a mobile phone … ."
The flange limitation has been deleted from independent claims 1 and 16. Independent claims 1,
12, 16, 34, and 39 recite the mask is in "substantially continuous, surface-to-surface contact
without a substantial space" between the inner surface of the mask and exterior housing of the
mobile device. In addition, the "flange" or "retainer" limitations are now recited as dependent
claims leaving the frictional fit as the only retention mechanism for independent claims 1, 16,

In re Patent Application of:                                    Page 11 of 17
Kuan-Lin Peng
Serial No. 13/094,428

and 34. The "flange" or "retainer" limitations remain included as limitations of claims 12 and 39.

Applicants note that the disclosed and described finger recessions are provided to allow the user to remove the tightly fitting cover: "The finger recessions 33 can also let the user conveniently separate the mobile phone 40 and the lower cover body 30" (filed application, p. 4). Similarly, the shape of the cover is depicted as having a substantially identical shape, indicating that the cover is tightly fitting, and that no flanges are necessary to retain the cover, which is configured for a friction-fit by having a constricting effect at least on the side walls of the body.

Neither Koike nor McBride teach or suggest retaining a cover on a phone by frictional fit as required by independent claims 1 and 34. Koike requires snap members 7 on one body cover that engage with recesses 9 on another body cover to form the cover for the phone. If one of the Koike covers were to be removed, the phone could not remain engaged with the other cover. The phone would fall out of the other cover if the phone were to be turned upside down. Thus, there is no teaching in Koike of using only one cover and possibly attaching it onto a mobile phone. To illustrate this, Applicant notes that Koike further provides a separate battery unit cover 24 from cover 5 for replacing a battery so that a user doesn't need to disassemble whole covers when replacing a battery. It provides receiving unit 23 to hold top cover in place together. This further supports that the operation of Koike requires retention clips – indeed two independent sets of them - those that hold battery cover 24 to top cover 4, and those that hold cover 23 to top cover 4.

In McBride, a phone is engaged with the cover using a pocket formed by the cover. The phone in McBride is first inserted into the pocket formed by cover 40 and partial extension 70 followed by engagement of slotted indentations 58 with the phone. McBride does not retain the phone in the cover by frictional fit with the cover.

Neither Koike nor McBride, alone or in combination, teach or suggest the "substantially continuous, surface-to-surface contact … without a substantial space" as recited in claims 1, 12, 16, 34 and 39. Koike must have a gap between the phone 2 and body cover 3 because snap members 7 must temporarily flex toward the phone to engage a recess 9 connecting upper and lower body covers 4, 5 to each other (and, alternatively, to disconnect upper and lower body covers 4, 5) indicative that there must be spacing between body cover 3 and phone 2. Further,

11

In re Patent Application of:                                          Page 12 of 17
Kuan-Lin Peng
Serial No. 13/094,428

Koike's upstanding battery cover (24) clips shown in the portion of FIG. 1 of Koike illustrated below which hold the battery cover to lower cover 5 create a space between phone 2 and lower body cover 5.



Portion of FIG. 1 of Koike

The Advisory Action dated July 16, 2015 asserts that Koike discloses "substantially continuous, surface-to-surface contact" in Figs. 1 and 3. Figs. 1 and 3 do not however show any substantially continuous surface-to-surface contact. Fig. 1 shows the two upper and lower body covers separated from the phone, and FIG. 3 is a side view that would not show the space formed between the sides of the phone and the sides of the covers. Again, a mobile phone inserted into one of the Koike covers would fall out of the cover if the phone would be turned upside down while holding the cover.

The Advisory Action also states "Koike, when the two covers are snapped into each other, the two covers are held tight to the phone body and therefore there is no gap between the phone body and the covers." The Advisory Action does not account for the space that must exist between the side of the phone and sides of the covers to accommodate the flexing of the snap members 7 as the snap members 7 engage with the corresponding recesses 9. This space is necessary. Otherwise, the side of the phone would obstruct the snap members 7 from engaging

12

In re Patent Application of:                                    Page 13 of 17
Kuan-Lin Peng
Serial No. 13/094,428

with the recesses 9. Once the covers are snapped into each other, the space does not go away. The space remains between the phone and covers precluding any substantially continuous surface-to-surface contact.

McBride too fails to teach or suggest the "substantially continuous, surface-to-surface contact …" limitation. In the Examiner-Initiated Interview Summary (Interview Summary) dated July 16, 2015, the Examiner argued that McBride teaches limitations relating to the mask being molded to conform to a shape of the exterior housing at col 3 line 20-25 and 28-30. Applicant notes McBride states at col. 3 line 20-25 "[t]he rigid cover is preferably a unitary structure configured to conform to the outer dimensions of the device, and specifically the outer dimensions of the housing of the device." Applicant's note that the statement in McBride relating to "conforming to the outer dimensions" does not mean that the cover has the same "shape" as set forth in the pending claims, but rather that the case is able to accommodate the overall size of the phone. The term "dimensions" does not mean the same as the term "shape." (Merriam-Webster Dictionary: "**dimension**: the length, width, height, or depth of something: a measurement in one direction (such as the distance from the ceiling to the floor in a room)" compared to "**shape**: to give a particular form or shape to (something): to work with (a material) in order to make something from it"). Applicants respectfully submit that the term "dimension" is understood to refer to length, width, and height of an object, and not to the detailed form of an object. On the contrary, the term "shape" refers to more detailed characteristics of the particular form of an object. Conformance with dimensions of the exterior housing is different from "molded to conform to the shape of the exterior housing."

Neither Koike nor McBride teach or suggest a cover in substantially continuous, surface-to-surface contact without substantial space as recited in claims 1, 12, 16, 34, and 39 nor a protective mask that is frictionally-retained to the housing of the phone as recited in claims 1and 34. An attempt to combine the teachings of Koike and McBride does not cure the deficiencies in the teachings of each reference. As noted above, Koike and McBride have different retention mechanisms for engaging the cover to the phone. Koike's two-cover design requires that the *covers engage each other*. A phone would tumble out of a Koike cover without the other cover.

McBride, by contrast, discloses a *single-cover* device in which a top portion of phone 10 is drop-fit and inserted into cover 40 and the pocket-like portion formed between cover 40 and partial extension 70 that extends across the back side of cover 40. Next, the bottom portion of the phone 10 is pushed up, allowing slotted indentations 58 on cover 40 to clasp corresponding indentations in phone 10. McBride at col. 4, lines 17-27 and FIGS. 4-6. The phone 10 is held in place by the combination of the pocket and partial extension 70, and by slotted indentations 58. McBride teaches inserting the phone in a pocket. (see McBride: in Abstract "said outer cover having at one end thereof a partial extension over said back side to receive and hold said inner cover in position and said outer cover having at the outer end of said back side at least one clasp to grasp and hold said inner cover in place at said other end", at col. 1, lines 61-65 "The outer cover has at one end thereof a partial extension over the back side to receive and hold the inner cover in position, and the outer cover has at the outer end of the back side at least one clasp to grasp and hold the inner cover in place at the other end.", at col. 2, lines 7-11 "The outer covers each have at one end thereof a partial extension over the back side to receive and hold the inner cover in position. The outer covers each have at the other end thereof at least one clasp to removably grasp and hold the inner cover in place at the other end", at col. 4, lines 17-27, at col. 4, lines 54-59 "As shown in FIG. 5, cover 40 includes a partial extension 70 that partially extends over the bottom of cover 40 from the upper side of cover 40. Phone 10 inserts into cover 40 at the bottom of cover 40 and underneath partial extension 70. To then secure phone 10 within cover 40, cover 40 is provided with slotted indentations 58 (FIGS. 2 and 4) that snap cover 40 onto phone 10. Indentations 58 cooperate with corresponding indentations in phone 10 to act as a clasp, holding cover 40 onto phone 10"). These portions of McBride all talk about the cover retention being accomplished by a combination of pocket like portion and indentation.

The Examiner asserted McBride originally for its teaching of indentations asserting such indentations read on the flanges limitations in claims 12 and 39. However, a person of ordinary skill in the art would not have added McBride's indentations to retain a phone in the loose-fitting Koike two-part cover. Such indentations would not be a sufficiently strong retention mechanism and the phone would still fall out of the cover without the other cover attached.

The two retention mechanisms of Koike and McBride cannot be physically combined. Even if some combination could be conceived, it would not teach either substantially continuous surface-to-surface contact or frictional retention of the phone in the cover. Accordingly, neither Koike nor McBride, alone or in combination, teach or suggest the substantially continuous surface-to-surface nor the frictional retention limitations. The combination of Koike and McBride fails to present a *prima facie* case of obviousness.

Koike and McBride cannot be combined to arrive at the claimed subject matter, and there is simply no motivation to do so. One of ordinary skill in the art would not be motivated to substitute the McBride single-cover clasp attachment to the phone for the Koike cover-to-cover attachment. The two retention mechanisms teach away from such a combination. First, Koike's covers attach to each other, so a person of ordinary skill in the art would be led away from referencing a teaching, as in McBride, of a phone-in-a-pocket attachment; and (2) Koike's covers attach each other face-to-face, again leading a POSIA away from referencing McBride's cover in which the phone is dropped in and slid into the single cover. McBride also teaches away from the claimed mask because McBride's cover 40 is constructed to require the combination of the partial extension 70 and slotted indentations 58 to secure the cover to the phone. McBride is inoperable if either of these parts is missing.

The Examiner is combining two references that teach away from one another by asserting (incorrectly as shown above) that the two references disclose the limitations of the claims. In doing so, the Examiner is failing to consider the invention as a whole. *See Litton Indus. Prods., Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 164 (Fed. Cir. 1985) ("It is elementary that the claimed invention must be considered as a *whole* in deciding the question of obviousness."). The Examiner's element-by-element analysis is particularly improper where the references teach away from the combination. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) ("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements."); *In re Gal*, 980 F.2d 717, 719 (Fed. Cir. 1992) (holding that different structure to achieve a different purpose was not an obvious design choice); *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) (a reference teaches away "when a person of

In re Patent Application of:                                                      Page 16 of 17
Kuan-Lin Peng
Serial No. 13/094,428

ordinary skill, upon reading the reference … would be led in a direction divergent from the path
that was taken by the applicant"); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (a
suggestion to combine references is required for a finding of obviousness).  The great challenge
of the obviousness judgment is proceeding without any hint of hindsight.  *See ATD Corp. v.
Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998) (observing that obviousness "cannot be based on
the hindsight combination of components selectively culled from the prior art to fit the
parameters of the patented invention "); *Bayer Schering Pharma Ag v. Barr Labs.*, 575 F.3d
1341, 1347 (Fed. Cir. 2009) (to render a claim obvious, prior art cannot be "vague" and must
collectively guide an artisan toward a particular solution).

<u>Claim 39</u>

Independent claim 39 is also different from McBride and the referenced combination in
the simplicity and convenience with which the phone is engaged to the mask using the subject
matter of claim 39.  While claim 39 was not rejected under any Sec. 112 issues, the Examiner
suggested the specification lacks support for "wherein during initial engagement of the mask to
the mobile communication device, the exterior housing defines a generally planar position which
can be angularly oriented relative to the mask … ." Support for this limitation may be found in
FIGs. 3 and 7. It is clear from the figures that one of ordinary skill in the art would discern that
the phone could be inserted into the cover without requiring a precise parallel orientation relative
to the cover. The phone could clearly be inserted at an angular orientation relative to the cover. It
is noted that the exact language of claim limitations need not be repeated in the specification in
order to provide support.

McBride's phone 10 and cover 40 must be oriented precisely, and cannot be angularly
oriented relative to each other, to effect coupling engagement.  This is in contrast with the
present invention as recited in Claim 39, in which the mobile communication device housing can
be oriented in any direction relative to the mask, without impairing the ability to couple the mask
to the exterior housing of the mobile communication device.  McBride, therefore, teaches away
from Claim 39 at least because McBride lacks, "wherein during initial engagement of the mask
to the mobile communication device, the housing defines a generally planar position which can
be angularly oriented relative to the mask, and which can include: planar positions rotated about

In re Patent Application of:                                              Page 17 of 17
Kuan-Lin Peng
Serial No. 13/094,428

a longitudinal axis of the mask; and planar positions rotated about an axis normal to the

longitudinal axis of the mask."

McBride requires precise orientation between the cover 40 and the phone 10 in order to

engage the cover 40 to the phone 10. And McBride requires a specific mounting sequence in

which the phone is first inserted into the pocket formed by cover 40 and partial extension 70

followed by engagement of slotted indentations 58 with the phone. McBride is inoperative if this

sequence is not followed and both of partial extension 70 and slotted indentations 58 are not

provided.


Other Dependent Claims

Since the other dependent claims are based on allowable independent claims,

Assignee will not separately argue these dependent claims because they are already deemed

patentable. If necessary in the future, Assignee reserves the right to identify further distinctions

between these currently rejected dependent claims and the references of record.


**Conclusion**

The application is believed to be in condition for allowance. If any points remain in issue

which the Examiner feels may be best resolved through a personal or telephone interview, the

Examiner is kindly requested to call the undersigned at the telephone number listed below before

issuing a further Office Action.


Dated: October 26, 2015

Respectfully submitted,

/Robert J. Irvine/_____
Robert J. Irvine
Registration No. 41,865
Invention Mine LLC
Attorney for Applicant

17